United States District Court
District of Rhode Island

Rev. Anne S. Armstrong,  )
   First Plaintiff  )
     )
and  )
     )
Rev. Alan L. Gordon,  )
   Second Plaintiff  )   CASE NO:
     )
vs.  )
     )
State of Rhode Island,  )   **COMPLAINT FOR DAMAGES**
   First Defendant  )   **PURSUANT TO 42 U.S. CODE § 1983**
     )   **AND 18 U.S. CODE § 1962**
Peter F. Neronha,  )
Rhode Island Attorney General,  )
in his personal and professional capacity,  )
   Second Defendant  )   **DEMAND FOR JURY TRIAL**
     )
Robert P. McKenna,  )
RI Special Assistant Attorney General,  )
in his personal and professional capacity,  )
   Third Defendant  )
     )
Michael S. McCabe,  )
RI Special Assistant Attorney General,  )
in his personal and professional capacity,  )
   Fourth Defendant  )
     )
Alexander Schultheis,  )
RI Special Assistant Attorney General,  )
in his personal and professional capacity,  )
   Fifth Defendant  )

FILED 2024 FEB 14 P 2:44 U.S. DISTRICT COURT DISTRICT OF RHODE ISLAND

## Jurisdiction:

1. This Hon. Court has jurisdiction under 28 U.S. CODE § 1331 because a federal question arises pursuant to both 42 U.S. CODE § 1983 and 18 U.S. CODE § 1962.

2. Federal jurisdiction is particularly poignant because of deficient available State remedy. In the Defendant State's statute, only the State Attorney General (a key actor and witness) may bring State civil actions for violations covered federally by 42 U.S. CODE § 1983, and the RI Attorney General (i.e. Defendant)'s office has sole criminal and primary civil authority to complaint of State violations analogous to 18 U.S. CODE § 1962.

## Venue:

3. Venue is proper under 28 U.S. CODE § 1391 because the Defendant, for the purposes of that Act, resides/operates in this District, because the acts complained-of occurred in this District, and the Plaintiffs reside in this District.

## Introduction -- the Parties

4. Plaintiff 1, Rev. Anne S. Armstrong (Rev. Armstrong) is *in pro persona*, and has at all material times been, a Hebrew Catholic religious leader/practitioner, whose religion is partly racial, and partly elective. She has at all material times resided at 99 Hudson Pond Road, in West Greenwich, Rhode Island, 02817, where she operates the head- and living quarters of her ministry, "The Healing Church IN RI" ("The Healing Church").

5. Plaintiff 2, Rev. Alan L. Gordon (Rev. Gordon) is *in pro persona,* and has at all material times been, a Hebrew Catholic religious practitioner and employee of First Plaintiff Rev. Armstrong's ministry, residing also at 99 Hudson Pond Road, in West Greenwich, Rhode Island 02817.

6. Defendant 1 is the State of Rhode Island, and, for the purposes of this complaint, includes all executive agencies, agents, offices, personnel, licensors, licensees, assignors and assignees <u>professionally involved in the licensure of commercial cannabis,</u> the enforcement thereof, and authorship of regulations therefore, including lawyers, and specifically excluding State and local police officers/offices.

7. Defendant 2, RI Attorney General Peter F. Neronha ("Neronha"), was the United States Attorney for Rhode Island from 2009 until March 2017, and the Attorney General of Rhode Island from January 1, 2019 to the present, ongoing. Neronha won his elected office by defeating Plaintiff 2 (Rev. Gordon) in a 2-candidate election in November 2018. Neronha

has sole statutory authority to appoint RI Special Assistant Attorneys General under Rhode Island General Laws (RIGL) § 42-9-1. Defendant 2's address is 150 South Main Street, Providence, Rhode Island, 02903.

8. Defendant 3, RI Special Assistant Attorney General Robert P. McKenna ("McKenna") was appointed by Defendant 2 Neronha. Defendant 3's address is 150 South Main Street, Providence, Rhode Island, 02903.

9. Defendant 4, RI Special Assistant Attorney General Michael S. McCabe ("McCabe") was appointed by Defendant 2 Neronha. Defendant 4's address is 150 South Main Street, Providence, Rhode Island, 02903.

10. Defendant 5, RI Special Assistant Attorney General Alexander Schultheis ("Schultheis") was appointed by Defendant 2 Neronha.  Defendant 4 no longer works there, but was previously addressed at 150 South Main Street, Providence, Rhode Island, and currently resides at 7 Upland Woods Circle, Unit 209, Norwood, Massachusetts 02062.  All herein complained-of acts/omissions of this Defendant occurred simultaneous to his employment by the Attorney General.

## Claim 1:

11. Defendants did, from the present day backwards in time (beyond the statutory limitation duration), cause damages described below, to the Plaintiffs, by a pattern of "deprivation of rights under color of law" (in violation of 42 U.S. CODE § 1983). This was done namely by **prosecuting the Plaintiffs for a fictional felony** (i.e. one not in Rhode Island statute), thereby depriving Plaintiffs of fundamental right protections

   A. for *habeas corpus*,

   B. against *ex post facto* laws

   C. for *fair trial* and *due process*, additionally violated, in the course of aforementioned rights deprivations, by, for example:

   1) tampering with Court records and/or impersonating Plaintiffs for those purposes (and/or conspiring with others to do so)

   2) acting against express Court Order in ways which repeatedly and seriously injured Plaintiff 1, a legally elderly person, in open RI Superior Court, (and/or conspiring with others to do so).

3) outright theft of evidence, including a religious painting valued at over $2000.00, and of other religious materials (and/or conspiring with others to do so)

4) prosecuting with disqualifiable counsel, nominally independent of the Attorney General, yet one lacking proper independence at the start, further losing neutrality via open *animus* after injuring the elderly Plaintiff 1 in open Court by repeatedly breaching an express Order of the RI Superior Court, and resulting in yet further, numerous apparent and/or actual biasing representations made to the RI Superior Court.

5) Maliciously prosecuting Plaintiff 1's adult son for a similar non-criminal activity (and/or conspiring with others to do so)

6) Forced separation of parent-child in a family belonging to the Church led by the Plaintiffs (and/or conspiring with others to do so).

7) Other

D. for *race* and *religion,* two uber-protected classes, both of which the Defendants deliberately, willfully targeted against the Plaintiffs in open Court (and/or conspiring with others to do so), even defying another apparent Order of the RI Superior Court not to do so.

## Claim 2:

12. Defendants carried out the above-referenced deprivation (under color of law) of Plaintiffs' rights in the context of a **pattern of racketeering** activities, in a "racketeering enterprise" (as per 18 U.S. Code § 1961(4)) in breach of 18 U.S. Code § 1962. In short, the Defendants entered into, and participated in, a scheme ("the *cannabis racketeering scheme*") to unlawfully extort revenues from Rhode Island individuals and businesses, in the form of taxes, fees, fines and/or cannabis sale prices kept artificially high, by fraudulently representing that growing cannabis or having large amounts, without an expensive, burdensome license, was a felony -- when no such felony statute has been in RI statute going back to 1988 or earlier. The *cannabis racketeering scheme* involved imprisoning (enslaving) those persons deemed non-compliant, irrespective of whether or not such persons had committed any imprisonable offense).

13. Irrespective of the Defendants' paucity or outright lack of statutory RI felony cannabis restrictions, Defendants represented that such a felony law was still extant in RI statute, furthering the *cannabis racketeering scheme* via numerous State agencies used to collect revenues to license such activity (in a protection racket against the fictitious felony statute charge), while using still other State agencies to aggressively prosecute those who did not pay, taking cash and other property, and depriving such persons of freedom with a fictional felony law. While the State revenue collection was a racket unto itself (seeking to license that which was federally prohibited, but which was not in fact State-prohibited, and relying on a gambling lottery to award commercial licenses, as a way to avoid being charged with a

fictional felony statute), but the main beneficiaries were both licensed and unlicensed cannabis vendors, whose sale prices were thus kept artificially high, and whose competition was kept artificially low.

14. Defendants carried out the *cannabis racketeering scheme* with a network system of "static" and "roving" State agencies hosting and/or abeting it. The racket itself was illegal revenue collection, and its headquarters or base can readily be seen

   A. first in the State Health Department (which first governed cannabis licensing and related administrative law authorship),

   B. then in the Governor's Executive office (which then took up the cannabis licensing and administrative law authorship mantle),

   C. then in the Department of Business Regulations (who now handles licensing and administrative law authorship).

Those were the so-called "roving" State agencies which housed and ran the roving racket for its handlers, and the so-called "static" agencies involved were the ones which did not directly control licensing or administrative law authorship, but which nonetheless provided static support for the *cannabis racketeering scheme,* support that found a permanent (static) home in such departments namely,

    A. the RI House Speaker's Senior Deputy Chief of Staff,

    B. the Attorney General (Defendant 2),

    C. Special Assistant Attorneys General quasi-independent of the Attorney General (Defendants, 3, 4, and 5)

    D. state and local police,

    E. the joint State-federal High Intensity Drug Task Force (HIDTA)

    F. others

15. This constitutes "racketeering activity" per 18 U.S. CODE § 1961(1)(A) in several ways because Defendants' licensing scheme involved repeated instances of one or more (if not all) of the following:

    A. Gambling, via an unlawful gambling license lottery.

    B. Bribery, via unlawful collection of moneys

    C. Extortion, by compelling payment of moneys

    D. Dealing in Controlled Substances

16. The above-referenced Defendants' behavior also constitutes "racketeering activity" under <u>18 U.S. CODE § 1961(1)(B)</u> because it entails indictable activity under the following <u>18 U.S. Code</u> sections:

    A. <u>Bribery</u> under <u>Section 201</u>

    B. <u>Straw purchasing</u> under <u>Section 932</u>

    C. <u>Transmission of gambling information</u> under <u>Section 1084</u>

    D. <u>Mail fraud</u> under <u>Section 1341</u>

    E. <u>Wire fraud</u> under <u>Section 1343</u>

    F. <u>Financial institution fraud</u> under <u>Section 1344</u>

    G. <u>Obstruction of justice</u> under <u>Section 1503</u>

    H.  <u>Obstruction of criminal investigations</u> under <u>Section 1510</u>

    I.  <u>Obstruction of State or local law enforcement</u> under <u>Section 1511</u>

    J.  <u>Tampering with a witness, victim or informant</u> under <u>Section 1512</u>

    K.  <u>Retaliating against a witness, victim or informant</u> under <u>Section 1513</u>

    L.  <u>Fraud and misuse of visas, permits and other documents</u> under <u>Section 1546</u>

    M.  <u>Peonage, slavery, and trafficking in persons</u> under <u>Section 1581-1592</u>

    N.  <u>Economic espionage and theft of trade secrets</u> under <u>Section 1831-1832</u>

    O.  <u>Interference with commerce</u>, <u>theft</u>, <u>robbery</u> and/or <u>extortion</u> under <u>Section 1951</u>

    P.  <u>Racketeering</u> under <u>Section 1952</u>

    Q.  <u>Interstate transportation of wagering paraphernalia</u> under <u>Section 1953</u>

    R.  <u>Illegal gambling business</u> under <u>Section 1955</u>

S. <u>Money laundering</u> under <u>Section 1956</u>

T. <u>Engaging in monetary transactions in property derived from specified unlawful activity</u>, under <u>Section 1957</u>

U. <u>Interstate transportation of stolen property</u>, under under <u>Section 2314-2315.</u>

17. The above-referenced Defendants' behavior also constitutes "racketeering activity" under <u>18 U.S. CODE § 1961(1)(D)</u>, because it involves either/or <u>Fraud</u> and <u>Controlled Substance</u> violations

**<u>Damages:</u>**

18. In depriving Plaintiffs' rights under color of law as described in the above Paragraphs, Defendant caused reasonably forseeable damage to Plaintiffs (US $222 million dollars to Plaintiff 1 Rev. Armstrong, and US $111 million dollars to Plaintiff 2 Rev. Gordon), via damage headings such as:

A. financial damages

B. loss of unique (invaluable, incalculable) property

C. restriction of freedom

  D. loss of reputation

  E. pain and suffering (physical and mental)

  F. familial/social alienation

  G. Other

### Remedies:

19. Plaintiffs seek to recover the specified damages.

20. Plaintiffs additionally seek exemplary, or punitive damages, in the interests of justice, to strongly discourage recurrence. Plaintiffs endeavor to make any punitive award, above and beyond other damages, available to a relevant charity or trust for the benefit of other persons similarly affected.

21. In Defendants' color-of-law deprivations of Plaintiffs' rights, **triple damages** are available under 18 U.S. CODE § 1964(c), because the damages occurred in furtherance of racketeering.

22. Plaintiffs seek to recover damages specified, and/or any other applicable ones, as well as all other applicable court costs, legal fees, representation and/or other expenses and standard interest accruing from the Defendants' acts/omissions, including cost award for this instant litigation.

Humbly submitted *in pro persona*

_____ 2/14/2024   _____ 14th February 2024

Rev. Anne S. Armstrong,    Rev. Alan L. Gordon

99 Hudson Pond Road    99 Hudson Pond Road

West Greenwich    West Greenwich

Rhode Island    Rhode Island

401-304-6543    401-304-6543

anne.armstrong.ri@gmail.com    judges1412@gmail.com